NOT FOR PUBLICATION                                    (Doc. No. 15)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                          :
WILLIAM J. EINHORN,                       :        Civil No. 13-3634 (RBK/JS)
                        Plaintiff,        :        **OPINION**
                                          :
            v.                            :
                                          :
DIMEDIO LIME CO.,                         :
                                          :
                        Defendant.        :
_____ :

**KUGLER,** United States District Judge:

　　This matter arises from the alleged liability of Defendant DiMedio Lime Co.

("Defendant") for withdrawing from the Teamsters Pension Trust Fund of Philadelphia and

Vicinity ("Fund").  Currently before the Court is the motion of William J. Einhorn ("Plaintiff"),

Administrator of the Fund, for summary judgment pursuant to Federal Rule of Civil Procedure

56.  Plaintiff demands payment of Defendant's liability for a complete withdrawal pursuant to

Section 4201 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1381, as

well as attorney's fees, costs, and interest pursuant to 29 U.S.C. §§ 1132(g)(2) and 1451(e).  For

the reasons stated herein, Plaintiff's motion will be **GRANTED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

　　The following facts are not disputed by the parties.  The Fund is a multiemployer pension

plan and employee pension benefit plan.  (Plaintiff's Statement of Material Facts Not in Dispute

("Pl.'s SMF") ¶ 3.)  Defendant had participated in and contributed to the Fund pursuant to the

terms of a series of collective bargaining agreements ("CBAs") between itself and the

International Brotherhood of Teamsters, Local Union No. 676.  (Id. ¶ 6.)  The CBA required

1

Defendant to make contributions to the Fund for each full hour worked by each employee covered by the CBA, making Defendant a participating employer.  (Id. ¶ 7.)  Defendant ceased all business operations in December 2012, and has not since resumed operations.  (Affidavit of Ronald J. DiMedio, ¶ 2.)  The Fund determined that Defendant had effected a complete withdrawal from its plan during the 2011 plan year.  (Ex. B to Pl.'s Br., Fund's Demand Letter.)  By way of letter dated October 11, 2011, the Fund demanded payment of $1,087,026.23 for Defendant's withdrawal liability, to be paid in 41 quarterly installments, commencing on December 10, 2011.  (Id.)  On December 15, 2011, having not received any payment, the Fund sent another letter demanding that Defendant make its required payments within 60 days.  (Pl.'s SMF ¶ 11.)

Defendant never requested review of the Fund's determination.  (Id. ¶ 12.)  Defendant, however, did file a demand for arbitration pursuant to 29 U.S.C. § 1401 on December 9, 2011.  (Id. ¶ 13.)  Nevertheless, the arbitration was dismissed on April 11, 2013, due to Defendant's failure to respond to an Order to Show Cause issued by the Arbitrator as to why the arbitration should not be dismissed due to Defendant's failure to participate in the arbitration proceeding.  (Id. ¶ 16.)  On February 15, 2012, the Fund notified Defendant that its failure to make timely

withdrawal liability payments resulted in default.  (Id. ¶ 15.)  To date, Defendant has not made

any payments toward the assessed withdrawal liability.  (Id. ¶ 17.)

　　　Plaintiff filed his Complaint on June 11, 2013, to collect the withdrawal liability

allegedly owed.  (Doc. No. 1.)  On April 29, 2014, Plaintiff filed the instant motion for summary

judgment.  (Doc. No. 15.)

## II.  LEGAL STANDARD

　　　Summary judgment is appropriate where the Court is satisfied that "there is no genuine

dispute as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine dispute

of material fact exists only if the evidence is such that a reasonable jury could find for the non-

moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court

weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

　　　The burden of establishing the nonexistence of a "genuine issue" is on the party moving

for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir.

1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the

absence of a genuine issue of material fact" or by "'showing' – that is, pointing out to the district

court – that there is an absence of evidence to support the nonmoving party's case."  Celotex,

477 U.S. at 325.

　　　If the party seeking summary judgment makes this showing, it is left to the nonmoving

party to "do more than simply show that there is some metaphysical doubt as to the material

facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, to

survive summary judgment, the nonmoving party must "make a showing sufficient to establish

the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 F. App'x. 353, 354 (3d Cir. Sept. 17, 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  Credibility determinations are the province of the fact finder, not the district court.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.    DISCUSSION

Defendant disputes the Fund's finding that it completely withdrew from the Fund.  Def.'s Response to Pl.'s SMF ("Def.'s Resp.") ¶ 9.  Defendant claims that it was a manufacturer and distributor of building products, and thus its employees were considered "construction industry" employees under 29 U.S.C. § 1383(b).  Def.'s Supplemental Statement of Material Facts in Dispute ("Def.'s Supp. SMF") ¶ 1; Affidavit of Ronald J. DiMedio, ¶¶ 3-4 ("[Defendant]…produced building supplies and materials" and "transported materials to customers").  Defendant argues that "[d]ue to application of 29 U.S.C. Section 1383(b)," which provides an exception for the building and construction industry, "there was, at best, a partial withdrawal." Def.'s Resp. ¶ 9.  Plaintiff, on the other hand, argues that Defendant's failure to arbitrate its dispute bars the current challenge.  Pl.'s Br. 7.  Plaintiff asserts that the entire

4

withdrawal liability is due, along with interest, liquidated damages, and attorney's fees and costs. Id. 12-14.

### A. Arbitration Requirement

Congress enacted the Multiemployer Pension Plan Amendments Act ("MPPAA") "out of concern that multiemployer pension plans could collapse as employers withdrew if the remaining contributors became too few in number to pay the unfunded vested benefits." Galgay v. Beaverbrook Coal Co., 105 F.3d 137, 139 (3d Cir. 1997). See also Einhorn v. J & S, Inc., 577 F. Supp. 2d, 752, 759–60 (D.N.J. 2008). Thus, under the MPPAA, an employer who withdraws (completely or partially) from a multiemployer plan is liable to the plan in an amount determined pursuant to statute. 29 U.S.C. § 1391(a). This liability is known as "withdrawal liability." See SUPERVALU, Inc. v. Bd. of Trs. of Sw. Pa. and W. Md. Area Teamsters & Emp'rs Pension Fund, 500 F.3d 334, 336 (3d Cir. 2007).

Under the MPPAA, a plan sponsor is required to notify a withdrawing employer of the amount of liability and the schedule for repayment, and to demand payment. 29 U.S.C. § 1399(b); Einhorn, 577 F. Supp. 2d at 760. The statute requires payment upon notification of withdrawal liability, whether or not the employer chooses to dispute it. Galgay, 105 F.3d at 139. "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). Either party may institute arbitration proceedings. Id.; Bd. of Trs. of Trucking Emps. of North Jersey Welfare Fund, Inc. – Pension Fund v. Gotham Fuel Corp., 860 F. Supp. 1044, 1047 (D.N.J. 1993). But if the employer fails to make the withdrawal liability payment within the statutorily prescribed time period, the withdrawal liability assessment becomes "due and owing," and an action to compel payment may commence

5

pursuant to 29 U.S.C. § 1451(b).  Gotham Fuel Corp, 860 F. Supp. at 1047; see also Galgay, 105 F.3d at 139.  In such a suit, a plan sponsor "need show only that it made a demand for interim payments under 29 U.S.C. § 1382 and that payments were not made." Id.

Pursuant to the MPPAA, a "complete withdrawal" occurs when an employer either "(1) permanently ceases to have an obligation to contribute to the plan, or (2) permanently ceases all covered operations under the plan."  29 U.S.C. § 1383(a).  An exception exists under § 1383(b) for members of the building and construction industry.  Under this sub-section, a complete withdrawal occurs only if an employer "ceases to have an obligation to contribute under the plan," and the employer "(i) continues to perform work in the jurisdiction of the collective bargaining agreement…or (ii) resumes such work within 5 years…and does not renew the obligation at the time of the resumption." § 1383(a).  The term "building and construction industry" has been narrowly construed to include only employers whose employees participate in the labor whereby materials and constituent parts may be combined on the building site to form, make, or build a structure.  See Union Asphalts and Roadoils, Inc. v. MO-KAN Teamsters Pension Fund, 857 F.2d 1230, 1234 (8th Cir. 1988).  "[E]mployers who manufacture construction materials that are installed by others at the construction site are not in the building and construction industry." Id.

The Court agrees with Plaintiff that Defendant's Supplemental Statement of Facts, as well as its responses to Plaintiff's Statement of Material Facts Not in Dispute, contain mostly statements that are best characterized as legal argument rather than statements of fact.[1]

---

[1] See, e.g., Def.'s Resp. ¶ 9 ("Denied.  Due to application of 29 U.S.C. Section 1383(b), there was, at best, a partial withdrawal effected."); Def.'s Supp. SMF ¶ 3 ("Defendant…never effected a 'complete withdrawal' from the subject multiemployer pension plan."); id. ¶ 1 ("Defendant…was a manufacturer and distributor of building products and it's (sic) employees were considered 'construction industry' employees under 29 USC Section 1383, subsection (b).")

Accordingly, the Court will disregard any legal argument encountered in Defendant's Rule 56.1 statements.  See L. Civ. R. 56.1(a) ("Each statement of material facts . . . shall not contain legal argument or conclusions of law."); Eckhaus v. Consol. Rail Corp., No. 00-5748, 2003 WL 23205042, at *6 (D.N.J. Dec. 24, 2003).  Whether a withdrawal has occurred, the type of withdrawal, and the applicability of 29 U.S.C. § 1383(b) are all legal questions, not factual ones, and may not be used by Defendant to avoid summary judgment.  Defendant argues that its situation falls into an exception for the building and construction industry; but even here Defendant has offered no evidence demonstrating that this provision is applicable, since the Affidavit relied upon for this proposition does not contain any indication that Defendant's employees actually engaged in the building or construction of materials or structures on-site. Because Defendant's entire response to Plaintiff's motion for summary judgment is predicated on legal conclusions concerning the application of 1383(b), the Court finds that there is no genuine issue of material fact in dispute.

Furthermore, Plaintiffs are entitled to judgment as a matter of law.  An employer that wishes to contest the assessment of a calculation of withdrawal liability must do so through the mandatory arbitration process established by the statute.[2]  Bd. of Trs. of Dist. No. 15 Machinists' Pension Fund v. Kahle Eng'g Corp., 43 F.3d 852, 854 (3d Cir. 1994) ("An employer who wishes to contest the fact of its liability or the amount must initiate arbitration.  If it does not, it waives the right to contest the assessment….").  According to the Third Circuit, "even pure issues of

---

[2] The Third Circuit has held that "under MPPAA there is no per se exhaustion requirement under which the court lacks jurisdiction to hear cases that have not first been before an arbitrator." Dorn's Transp. Inc. v. Teamsters Pension Trust Fund, 787 F. 2d 897, 903 (3d Cir. 1986).  However, exceptions to the arbitration requirement are only available in extraordinary circumstances.  See, e.g., Crown Cork & Seal Co. v. Cent. States Se. and Sw. Areas Pension Fund, 881 F.2d 11, 17 (3d Cir. 1989) (finding that the failure to arbitrate did not bar suit where defense being asserted had not been available prior to court action, but holding that, the defense now being available, it must be arbitrated first).

statutory interpretation are subject to MPPAA's arbitration requirements if they involve sections 1381-1399." Crown Cork & Seal Co., 881 F.2d at 18.

Here, it is undisputed that Defendant failed to request review from the Fund regarding its withdrawal liability assessment.  More importantly, Defendant admits that, although it initiated arbitration proceedings, it failed to pursue its demand or otherwise participate in the arbitration, leading to its dismissal.[3]  Defendant does not offer any excuse for its failure to participate in the arbitration proceedings.  Because Defendant failed to arbitrate any objection it may have had regarding the Fund's withdrawal liability assessment or the application of Section 1383(b), it is now barred from raising the defense that it only partially withdrew, as that defense has been available to Defendant since the Fund made its initial demand for withdrawal liability payment. Cf. Crown Cork & Seal Co., 881 F.2d at 16-17 (holding that a claim may proceed in district court despite the fact that no arbitration proceedings were pursued where the defense raised was not available to a defendant during the time limits required for arbitration).

This case is similar to Trucking Emps. of North Jersey Welfare Fund, Inc. – Pension Fund v. Parsippany Constr. Co., No. 08-2763, 2009 WL 1076201 (D.N.J. April 21, 2009).  In Parsippany Construction, the fund notified the employer of its complete withdrawal liability.  Id. at *1.  The employer did not make any payments, did not seek review of the assessment, and did not request arbitration to dispute the assessment.  Id.  The fund filed suit to collect the withdrawal liability.  Id.  In opposition to the fund's motion for summary judgment, the employer argued that it did not effectuate a complete withdrawal because it fell into the exception for the building and construction industry.  Id. at *3.  The court rejected the

---

[3] The Court does not find a meaningful distinction between failing to participate in the arbitration process where such failure ultimately results in the dismissal of the arbitration, and failing to initiate arbitration proceedings altogether.

employer's defense as "precisely the type of question arbitration is meant to address in the first

instance." Id.  Like the employer in Parsippany Construction, Defendant's argument fails here.

There is no issue of fact as to whether Defendant participated in the mandatory arbitration

process, and thus Plaintiff's motion for summary judgment is granted.

### B.  Defendant's Liability

In an action to collect withdrawal liability, "any failure of the employer to make any

withdrawal liability payment within the time prescribed shall be treated in the same manner as a

delinquent contribution" under Section 515 of ERISA, 29 U.S.C. § 1145.  29 U.S.C. § 1451(b).

In an action to enforce a delinquent contribution under Section 1145, Section 1132(g)(2) is

applicable, see Penn Elastic Co. v. United Retail & Wholesale Emps. Union, Local 115 Joint

Pension Fund, 792 F.2d 45, 48 (3d Cir. 1986), and where judgment is in favor of the fund,

provides for a mandatory award of the unpaid contributions, interest, liquidated damages, and

reasonable attorney's fees and costs.  29 U.S.C. § 1132(g)(2);[4] Anker Energy Corp. v.

Consolidation Coal Co., 177 F.3d 161, 179 & n.9 (3d Cir. 1999) ("[S]ection 502 of ERISA

---

[4] 29 U.S.C. § 1132(g)(2) provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
    (A)  the unpaid contributions,
    (B)  interest on the unpaid contributions,
    (C)  an amount equal to the greater of—
        (i)  interest on the unpaid contributions, or
        (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
    (D)  reasonable attorney's fees and costs of the action, to be paid by the defendant, and
    (E)  such other legal or equitable relief as the court deems appropriate.
For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26.

requires a district court to award interest, liquidated damages, and reasonable attorneys' fees and costs when a plan successfully enforces a demand for delinquent payments.")

Defendant admits that it received the February 15, 2012, notice of default and that it has not made any payments. Therefore, the Court grants judgment in favor of the Plaintiff in the amount of $1,087,026.23, the full withdrawal liability owed as determined by the Fund. In addition, the Fund shall also be awarded interest due as of the date of this Opinion, liquidated damages, and attorney's fees and costs incurred by Plaintiff in conjunction with this litigation, pursuant to 29 U.S.C. § 1132(g)(2). Plaintiff is directed to provide the Court with an affidavit concerning the interest rate to be applied, as well as the attorney's fees and costs, consistent with the Order accompanying this Opinion.[5]

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is **GRANTED**. An appropriate Order shall issue today.

Dated: 11/10/2014                                              s/ Robert B. Kugler
                                                              ROBERT B. KUGLER
                                                              United States District Judge

---

[5] Plaintiff argues that the Fund is owed $44,160.43 in interest, which was calculated using an interest rate of 3.25 percent based on 29 C.F.R. § 4219.32. Pl.'s Br. 14. Although Defendant did not contest this amount in its opposition, Plaintiff has not submitted any evidence that the pension plan did not provide for an interest rate. See 29 U.S.C. § 1132(g)(2) ("For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26.") The Court will therefore not rely on Plaintiff's brief in determining the amount of interest due. Plaintiff further demands $217,405.25 in liquidated damages, calculated at 20 percent of the amount owed in withdrawal liability. Pl.'s Br. 14. As the interest due on the unpaid contributions is yet to be determined, the Court cannot find that this is the appropriate amount of liquidated damages at this time. See 29 U.S.C. § 1132(g)(2)(C) (providing for liquidated damages in the amount equal to the greater of the interest due or 20 percent of the withdrawal liability deemed due).